UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SOFIA ZOUMBOULAKIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RICHARD A. MCGINN, et al.,<br><br>　　　　Defendants. | Case No. 5:13-cv-02379-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 63 |

I. INTRODUCTION

Plaintiff Sofia Zoumboulakis ("Plaintiff") filed the instant shareholder derivative action for the benefit of Nominal Defendant VeriFone Systems, Inc. ("VeriFone" or "Company"), against certain former and current members of VeriFone's Board of Directors (the "Board") and executive officers Richard McGinn ("McGinn"), Robert W. Alspaugh ("Alspaugh"), Leslie G. Denend ("Denend"), Alex W. Hart ("Hart"), Robert B. Henske ("Henske"), Wenda Harris Millard ("Millard), Eitan Raff ("Raff"), Jeffrey E. Stiefler ("Stiefler"), Douglas G. Bergeron ("Bergeron"), Robert Dykes ("Dykes"), and Charles R. Rinehart (collectively, "Defendants"), alleging breach of fiduciary duties and violation of federal securities laws. Presently before the Court is VeriFone's Motion to Dismiss Plaintiff's Third Amended Shareholder Derivative Complaint ("TAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 for failure to make a pre-suit demand on VeriFone's Board of Directors. The individual defendants have filed a joinder in VeriFone's motion. Plaintiff contends that she is excused from making a pre-suit demand because six of the nine current Board members could not disinterestedly and independently respond to a

Northern District of California

1  demand for action. TAC at ¶83.

2      The Court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b), and previously vacated the associated hearing. Having reviewed the parties' pleadings, the Court GRANTS Defendants' Motion to Dismiss.

## II. BACKGROUND

    VeriFone is a global provider of technologies that process electronic payments for goods and services. Plaintiff is an owner and holder of VeriFone common stock. Plaintiff alleges that since VeriFone went public in 2005, it has been plagued with serious internal control deficiencies. TAC at ¶1. She alleges that in 2009, VeriFone was formally charged by the U.S. Securities and Exchange Commission ("SEC") with accounting fraud during 2007 that overstated operating income by 129% and required a significant financial restatement in 2008. Id. A mid-level manager allegedly made multiple unsupportable accounting adjustments. Id. According to Plaintiff, the SEC alleged that proper controls should have been in place to "prevent the person responsible for forecasting financial results from making adjustments which allowed the Company to meet the forecast." Plaintiff alleges that in November 2009, VeriFone consented to the entry of a final judgment in the SEC action, which permanently enjoined the Company from violating federal securities laws. Id. at ¶3. The judgment also required the company to devise and maintain a system of internal accounting controls. Id.

    Plaintiff alleges that although the Board and executive officers were aware that VeriFone's deficient controls had permitted improper manual adjustments to the Company's internal results, they failed to institute sufficient internal controls. Id. at ¶ 4. From 2012 through the beginning of 2013, the Company's Chief Financial Officer Robert Dykes ("CFO Dykes"), who had responsibility for producing VeriFone's financial guidance and forecast of future revenues, allegedly pressured subordinate employees to inflate revenue, prematurely recognize revenue, and adjust revenue in other ways to bring it in line with previously issued forecast guidance. Id. at ¶¶4, 42. Plaintiff alleges that "[y]et again, the Company's internal controls failed to prevent 'the person responsible for forecasting financial results from making adjustments which allowed the

2

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Company to meet the forecasts." Id. at ¶4. Because of Dyke's alleged manipulation of the Company's revenue numbers, VeriFone's quarterly and annual financial disclosures, guidance, and proxy statement issued between December 2011 and February 2013 were allegedly misleading and inaccurate. Id. at ¶58.

Plaintiff alleges that in February 2013, the Company announced that CFO Dykes had retired, but he was in fact terminated for cause. Id. at ¶6. Two weeks after the new CFO was appointed, the Company allegedly disclosed very poor preliminary results for its first fiscal quarter of 2013, and repeatedly lowered its forecasts for the rest of 2013. Id. at ¶7. According to Plaintiff, as a result, the Company suffered a massive drop in the price of its common stock from a high of approximately $54 per share in April 2012 to less than $16 per share in the summer of 2013, lost ground against competitors, and lost credibility in the market place. Id. In her Third Amended Complaint, Plaintiff asserts the following claims: (1) breach of fiduciary duty; (2) abuse of control; (3) violations of §14 of the Securities Exchange Act of 1934; and (4) unjust enrichment. See id.

### III. STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court usually "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

3
Case No.: 5:13-cv-02379-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1542, 1555 n.19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

In addition, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court also must construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Nor must the court accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

## IV. DISCUSSION

Plaintiff alleges that prior to filing this action, she did not make a demand on the Board because making such a demand would have been a futile and useless act. Id. at ¶¶8, 82. Plaintiff reasons that a demand would have been futile because a majority of the Board "could not disinterestedly and independently respond to a demand for action." Id. at ¶83. Defendants contend that Plaintiff has failed to allege particularized facts showing that a majority of the Board is personally interested and unable to consider Plaintiff's claims. Further, Defendants contend that the TAC should now be dismissed with prejudice because Plaintiff has had four opportunities to plead that demand upon the Board would have been futile, and has failed to do so.

A. Federal Rule of Civil Procedure 23.1

Federal Rule of Civil Procedure 23.1 applies to shareholder derivative actions. Under Rule 23.1, "a shareholder must either demand action from the corporation's directors before filing a shareholder derivative suit, or plead with particularity the reasons why such demand would have been futile." Arduini v. Hart, 774 F.3d 622, 628 (9th Cir. 2014); see Fed. R. Civ. P. 23.1(b)(3). "The purpose of this demand requirement in a derivative suit is to implement the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate

4
Case No.: 5:13-cv-02379-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

litigation—should be made by the board of directors or the majority of shareholders." Rosenbloom v. Pyott, 765 F.3d 1137, 1148 (9th Cir. 2014) (internal quotations omitted).

To determine demand futility, courts must look to the substantive law of the entity's state of incorporation to determine whether the demand would have, in fact, been futile. Rosenbloom, 765 F.3d at 1148. In this case, VeriFone is a Delaware corporation, thus Delaware law applies.

Under Delaware law, "a shareholder who declines to make a demand on the board of directors may not bring a derivative action until he has demonstrated, with particularity, the reasons why pre-suit demand would be futile." Id. (internal quotations omitted). Demand futility "is gauged by the circumstances existing at the commencement of a derivative suit and concerns the board of directors sitting at the time the complaint is filed." Id. (internal quotations omitted). The court must determine futility on a case-by-case basis, and "[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged[.]" Id. However, "conclusory allegations are not considered as expressly pleaded facts or factual inferences." Id.

Delaware law provides a two-pronged test to determine demand futility. First "is whether, under the particularized facts alleged, a reasonable doubt is created that the directors are disinterested and independent." Id. at 1149. Second "is whether the pleading creates a reasonable doubt that the challenged transaction was otherwise the product of a valid exercise of business judgment." Id. This two-pronged approach is known as the "Aronson test," pursuant to Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984), and is in the disjunctive. Id. "Therefore, if either prong is satisfied, demand is excused." Id.

Under the first prong of the Aronson test, "a director's interest may be shown by demonstrating a potential personal benefit or detriment to the director as a result of the decision." Rosenbloom, 765 F.3d at 1149. Thus, "directors who are sued have a disabling interest for pre-suit demand purposes when the potential for liability may rise to a substantial likelihood." Id. In a motion to dismiss, "plaintiffs must make a threshold showing, through the allegation of particularized facts, that their claims have some merit." Id. (internal quotations omitted).

5
Case No.: 5:13-cv-02379-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Under the second prong of the Aronson test, "the question is whether the pleading creates a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment." Id. However, "for claims that demand is excused on the ground that a board remained consciously inactive when it knew (or should have known) about illegal conduct," a different test is applied—these are considered Caremark claims, pursuant to In re Caremark International Inc. Derivative Litigation, 698 A.2d 959, 971 (Del. Ch. 1996), which are tested under Rales v. Blasband, 634 A.2d 927 (Del. 1993). Id. at 1150. "Rales requires plaintiffs to allege particularized facts establishing a reason to doubt that the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Id. (internal quotations omitted).

The Ninth Circuit has provided that the difference between the Aronson and Rales tests are blurred in cases in which personal liability for breach of fiduciary duties implicates the board's availment of business judgment protections. Id. Thus, it does not matter which test applies. Id. "Under either approach, demand is excused if Plaintiffs' particularized allegations create a reasonable doubt as to whether a majority of the board of directors faces a substantial likelihood of personal liability for breaching the duty of loyalty." Id. In turn, the duty of loyalty "is violated where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities and failing to discharge the non-exculpable fiduciary duty of loyalty in good faith." Id. (internal quotations omitted).

C.  Five Director Defendants:  Alspaugh, Hart, Henske, Millard and Raff

Plaintiff contends that five Director Defendants, namely Alspaugh, Hart, Henske, Millard, and Raff could not disinterestedly and independently consider a demand for action because they face a substantial likelihood of liability for their alleged breaches of fiduciary duties. According to Plaintiff, these five Director Defendants permitted the Company to function with inadequate internal controls and to make inaccurate public statements that conveyed a misleading picture of VeriFone's business in the face of material adverse facts that the Director Defendants knew and consciously disregarded. TAC at ¶90. Plaintiff alleges that the material adverse facts known to

6
Case No.: 5:13-cv-02379-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

the Director Defendants included the fact that "the same inadequate internal controls that caused the 2008 financial restatement were never repaired and continued to be inadequate at least until February 2013." Id. Plaintiff alleges that because the Director Defendants knew and disregarded these adverse facts, the Director Defendants face a substantial risk of liability for breach of good faith and loyalty, rendering them unable to fairly and objectively evaluate a pre-suit demand. Id.

<u>Knowledge of Alleged Misfeasance Based on SEC Charge</u>

Like the Second Amended Complaint, the Third Amended Complaint alleges that Directors Alspaugh, Hart, Henske, and Raff were on the Board in 2009 when the SEC filed the complaint against VeriFone, and that VeriFone consented to a final judgment to resolve the SEC's enforcement action. TAC at ¶91. As a result, Alspaugh, Hart, Henske, and Raff allegedly knew that VeriFone lacked proper controls to prevent manual manipulation of internal financial reporting, and to prevent the person responsible for forecasting financial results from making adjustments. TAC at ¶91. Alspaugh, Hart, Henske, and Raff, however, allegedly declined to take action to strengthen internal controls. Id. Further, Alspaugh, Hart, Henske, and Raff signed the Company's December 23, 2011 Forms 10-K, which allegedly included misleading statements regarding the Company's internal controls and untrue certifications under Sarbanes-Oxley. Defendant Millard, together with Alspaugh, Hart, Henske, and Raff, signed the Company's December 19, 2012 Forms 10-K, which also allegedly included similarly misleading statements. Id. at ¶92.

The allegations above may be sufficient to support a reasonable inference that Defendants Alspaugh, Hart, Henske, Raff and Millard knew of the internal control deficiencies described in the SEC complaint; knew that VeriFone's internal controls had to be modified in order to prevent the person responsible for forecasting financial results from being able to make adjustments to the Company's financials; and knew that the internal controls had to be modified to ensure oversight of Defendant Dykes because he was the person responsible for forecasting financial results. Critically, however, for the reasons discussed below, Plaintiff has not alleged particularized facts identifying any specific deficiency in the internal controls. Nor has Plaintiff alleged particularized

7
Case No.: 5:13-cv-02379-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

facts explaining how the internal control was deficient.  Further, Plaintiff has not alleged particularized facts to show how a purportedly deficient control impacted any financial result or statement made by VeriFone.  Plaintiff also has not alleged particularized facts to support a reasonable inference that the five Director Defendants knew or had reason to know of any accounting irregularities linked to an inadequate internal control, and failed to act.  Instead, Plaintiff relies on the same conclusory allegations previously rejected by the Court.

<u>"Red Flags" Purportedly Raised by Analyst Reports</u>

Plaintiff relies on an analyst report issued by Deutsche Bank in April of 2012 that stated, in part, that VeriFone's "organic growth is being inflated through acquisitions."  The Deutsche Bank report also referred to "poor financial disclosures."  Plaintiff alleges that because the Director Defendants issued a press release the very same day, it is reasonable to infer the Director Defendants were made aware of allegations of accounting impropriety and yet failed to conduct an adequate investigation.   Plaintiff also relies on an analyst report issued by Wedbush in November of 2012 that faulted VeriFone for "opaque" financial reporting as another "red flag" putting the Defendant Directors on notice of accounting irregularities.  Plaintiff contends that the Defendant Directors face a substantial likelihood of liability for failing to investigate after the analyst reports were issued, and therefore a pre-suit demand would have been futile.

Neither the Deutsche Bank nor Wedbush reports, however, explicitly or impliedly refer to inadequate internal controls.  Nor do these reports contain accusations of accounting manipulation.  Instead, the Deutsch Bank reflected a difference of opinion about how to report organic growth.  The Wedbush referred to "opaque" reporting, which is distinct from accounting manipulation.  Furthermore, Plaintiff's complaint does not allege sufficient particularized facts to support an inference that a majority of the Board knew of the reports and chose not to take action in the face of the reports.  Therefore, the analyst reports do not provide a basis for raising a reasonable doubt as to whether a majority of the Board of Directors faces a substantial likelihood of personal liability for breaching the duty of loyalty.

<u>Committee Membership Allegations</u>

Plaintiff alleges that demand would have been futile specifically as to Defendants Alspaugh and Henske because they face liability for breaches of their duties as members of the Audit Committee. Plaintiff alleges that during the time of the alleged wrongdoing, Alspaugh and Henske were responsible for, but failed to ensure, the integrity of the Company's financial statements, the Company's compliance with legal and regulatory requirements, and the performance of the Company's internal audit function. Plaintiff alleges that Alspaugh and Henske knew of the precise deficiencies in VeriFone's internal controls raised by the SEC, but they declined to take action to repair those internal controls. Plaintiff also alleges that Alspaugh and Henske "presided over a complete lack of accountability and a culture where widespread and pervasively inadequate internal controls were permitted to continue unabated for years." TAC at ¶93.

Plaintiff similarly alleges that demand is futile specifically as to Defendants Alspaugh, Hart and Raff because they also face liability for failing to fulfill their responsibilities as members of the Corporate Governance and Nominating Committee. Defendants Alspaugh, Hart and Raff allegedly breached their fiduciary duties "by permitting the Company to suffer from a widespread and pervasive deficiency of internal controls for years, and declining to require truthful evaluations of management and the Board, and/or declining to act on evaluations truthfully describing the extent of managerial and directorial complicity in the Company's deficient controls." TAC at ¶94.

Plaintiff's conclusory allegations are unsupported by facts. Plaintiff generally refers to the integrity of the Company's financial statements, but fails to identify any specific misstatement or omission in a financial statement. Similarly, Plaintiff alleges a general failure to comply with legal and regulatory requirements, but fails to identify any specific legal or regulatory requirement that was violated. Plaintiff also fails to allege facts relating to the Company's internal audit function. Plaintiff makes sweeping allegations of widespread and pervasive deficiency of internal controls, and yet fails to identify a specific deficiency. Thus, Plaintiff has not satisfied its burden

to plead particularized facts to raise a reasonable doubt as to whether the Director Defendants who served on the Audit Committee or the Corporate Governance and Nominating Committee face a substantial likelihood of liability for breaches of fiduciary duties.

### Dykes' Alleged Termination

Plaintiff alleges that demand would have been futile specifically as to Defendants Henske and Millard because they face liability for actions they took as members of the Compensation Committee. Plaintiff alleges that Henske and Millard "knew of defendant Dykes' wrongdoing and the agreement to refer to his departure as a retirement, and thus consciously concealed the truth of Dykes' wrongdoing and VeriFone's deficient internal controls from investors." TAC at ¶95.

These allegations fail for the same reasons the Court previously stated in dismissing Plaintiff's Second Amended Complaint. First, Plaintiff has not alleged particularized facts to establish that Dykes manipulated the Company's finances. Plaintiff alleges on information and belief that Dykes "directed subordinate employees, at times in writing, to book revenue in violation of GAAP that was either being prematurely recognized or that should not have been booked as revenue at all" and "implemented an improper accounting change to permit VeriFone to recognize gross revenues from certain transactions in VeriFone's tax payment business when the revenues should have been recognized as net revenues." TAC at ¶¶43-44. These allegations are deficient in several respects. Plaintiff does not identify the subordinate employees. Nor does Plaintiff allege facts regarding when and how Dykes allegedly directed subordinate employees to violate GAAP. There are no facts alleged regarding the amount of the allegedly inflated revenue. Nor does Plaintiff allege particularized facts regarding the allegedly improper accounting change relating to VeriFone's tax payment business.

Second, even if Plaintiff's allegations were sufficient to support an inference that Dykes manipulated the Company's finances, there are insufficient particularized facts to support an inference that the Director Defendants knew of Dyke's alleged wrongdoing, and made a conscious decision not to act. The Defendant Directors' service on the Compensation Committee and knowledge of Dykes' separation agreement, without more, do not support these inferences.

Third, Plaintiff has not alleged particularized facts to support a reasonable inference that Dykes was terminated. Plaintiff contends that Dyke's termination can be inferred from the terms of his separation agreement, which "forced" him to "forfeit" hundreds of thousands of dollars in cash severance in order to maintain his right to outstanding equity awards vesting between February and May 2013, equity awards to which he would have been "automatically" entitled had he simply retired. TAC at ¶¶49-51. Plaintiff's complaint makes clear, however, that Dykes ceased working in February of 2013, and thus it is not reasonable to assume that Dykes would have been "automatically" entitled to have his equity continue to vest for two months more until May 2013. In sum, Plaintiff has not alleged particularized facts to create a reasonable doubt as to whether Henske, Millard, or any other of the Director Defendants face a substantial likelihood of liability.

C. Chief Executive Officer Paul Galant

Plaintiff alleges that VeriFone's current Chief Executive officer ("CEO"), Paul Galant ("Galant")[1], lacks independence such that demand upon him would have been futile. Plaintiff reasons that Galant is conflicted due to his dual roles as CEO and a director. TAC at ¶84.

Because Plaintiff has not alleged sufficient facts to justify failure to make a pre-suit demand on the five Director Defendants, the Court finds it unnecessary to consider Galant's independence.

## V. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss Plaintiff's Third Amended Shareholder Derivative Complaint is GRANTED with prejudice.

**IT IS SO ORDERED.**

Dated: September 22, 2017

EDWARD J. DAVILA
United States District Judge

---

[1] Galant is not named as a defendant because he joined the Company after the alleged wrongdoing at issue.

Case No.: 5:13-cv-02379-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS